UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES DALY,

                                      Plaintiff,

                                                                    **MEMORANDUM
            v.                                                      AND ORDER**
                                                                    23-CV-9179-SJB-JMW

THE INCORPORATED VILLAGE OF PORT
JEFFERSON, BRETT BAILEY,
and MARGOT GARANT,

                                      Defendants.
----------------------------------------------------------X
**BULSARA, United States District Judge:**

      Plaintiff James Daly ("Daly") filed this Section 1983 action for malicious

prosecution and abuse of process against the Incorporated Village of Port Jefferson (the

"Village"), Brett Bailey, and Margot Garant (collectively, "Defendants"), based on their

2017 prosecution of him for property-related violations of the Village Code.  The parties

have each moved for summary judgment.  (Pl.'s Mem. in Supp. of Mot. for Summ. J.

dated May 10, 2025 ("Pl.'s Mot."), Dkt. No. 70-6; Defs.' Mem. in Opp'n to Pl.'s Mot. & in

Supp. of Cross-Mot. for Summ. J. dated July 3, 2025 ("Defs.' Mot."), Dkt. No. 70-12).  For

the reasons explained, Daly's motion for summary judgment is denied and Defendants'

motion is granted.

                             STANDARD FOR SUMMARY JUDGMENT

      A "court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "This is true even though the court [is] presented with cross-motions for summary judgment; each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor." *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988). "When both parties have moved for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 149 (2d Cir. 2026) (quotation omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the

2

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).  Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013

3

WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)).  The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence.  *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).  The Court must also disregard conclusory denials that lack citations to admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.*  They should contain factual assertions, with citation to the record.  They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).  Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere

4

conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

As a threshold matter, the Court addresses a number of disputes about the parties' respective Rule 56.1 statements.  The parties dispute whether Daly served a statement upon the Defendants.  Daly contends that he served a copy of his statement on or about May 5, 2025 via U.S. mail.  (Pl.'s Opp'n to Defs.' Mot. & Reply in Supp. of Summ. J. dated July 29, 2025 ("Pl.'s Opp'n & Reply"), Dkt. No. 70-14 at 6).  He provides no evidence (like a declaration attesting to the mailing) for the assertion.  Defendants maintain that they were not served with the statement with the remainder of Daly's submissions, which were served via email, on May 12, 2025.  (Defs.' Mot. at 8; *see also* Decl. of Chelsea Weisbord in Further Supp. of Defs.' Mot., Dkt. No. 70-15 ¶ 3).  Daly provided a physical copy of an eight-paragraph Rule 56.1 statement to the Court along with courtesy copies of the briefs.  Notably, it was not filed on the docket.  In any event, despite the evidence suggesting that no statement was ever timely filed or served, even accepting Daly's statements as true, Daly's motion is denied and Defendants' motion is granted.

Separately, Daly failed to counter or respond to Defendants' Rule 56.1 statement. (*See* Defs.' Reply in Further Supp. of Defs.' Mot. ("Defs.' Reply"), Dkt. No. 70-16 at 2). Daly addresses Defendants' Rule 56.1 statement in his reply brief, a procedurally

improper means of raising disputed issues of fact.  (*E.g.*, Pl.'s Opp'n & Reply at 8–9); *see* Loc. Civ. R. 56.1(b),(e).  Those attempts also fail on their own because he does so without any citation to admissible evidence and makes assertions based solely on legal argument.  As such, all of Defendants' facts are, therefore, deemed admitted.  *See* Loc. Civ. R. 56.1(c); *Aptive Env't, LLC v. Village of East Rockaway*, No. 21-677, 2022 WL 211091, at *2 (2d Cir. Jan. 25, 2022) ("So long as the moving party's Rule 56.1(a) statement includes citations to admissible evidence, [i]f the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (quotation omitted)).

In 2017, Edward Hyshiver ("Hyshiver"), Daly's neighbor, complained that Daly was clearing trees on his property.  (Defs.' Rule 56.1 Statement dated July 3, 2025 ("Defs.' 56.1 Stmt."), Dkt. No. 70-11 ¶¶ 6, 21).  Around that time, Lorne Taichman ("Taichman"), another neighbor, made similar complaints about clearing and grading work being done on the property.  (*Id.* ¶ 22).  On March 8, 2017, Village Ordinance Inspector[1] Andrew Smith ("Smith") issued an Order to Remedy Violation against Daly for clearing trees and vegetation in violation of the Port Jefferson Village Code ("PJV") § 241-2(A), and directed Daly to make an application to the Planning Department to

---

[1] A Village Ordinance Inspector is tasked with enforcing the Village Code, the New York State Uniform code pertaining to property maintenance, the fire code, and the building and housing code.  (Defs.' 56.1 Stmt. ¶ 8).  When a citizen makes a complaint of a possible violation, a code enforcement official is expected to look into the complaint by visiting the site or checking the Village records.  (*Id.* ¶ 10).  Inspectors may issue orders to remedy or summonses and appearance tickets for violations.  (*Id.* ¶¶ 9, 11–12).

proceed with his work.  (*Id.* ¶¶ 4, 18–19).  Daly then received a separate, additional order to remedy that also alleged improper tree removal.  (*Id.* ¶ 20).

On May 11, 2017, Smith observed that Daly had a large area on his property lacking vegetation and trees, and inferred a clearing was done without first obtaining a permit from the Planning Board.  (*Id.* ¶¶ 30, 32).  Smith personally served Daly with Appearance Ticket 1833 on May 22, 2017, documenting the violations.  (*Id.* ¶ 33).  Smith also issued an Order to Remedy Violation to Daly for having two or more inoperative or unlicensed motor vehicles on his property in violation of the New York State Property Maintenance Code ("NYS PMC") § 302.8 and directed removal of the vehicles from the property.  (*Id.* ¶¶ 38–39).  Smith also issued an Order to Remedy Violation against Daly for a prohibited sign—a "No Parking" sign for which Daly had no permit—and directed Daly to remove the sign.  (Defs.' 56.1 Stmt. ¶¶ 51–54).

On June 19, 2017, a Stop Work Order for clearing and grading of the property was posted on Daly's garage.  (*Id.* ¶ 34).  On June 28, 2017, Smith observed and documented Daly's property being cleared without the required approval and contrary to the Stop Work Order in a summons and Appearance Ticket 1870, which he personally served on Daly the same day.  (*Id.* ¶¶ 35–37).  Smith also observed multiple unregistered vehicles parked on Daly's property in violation of NYS PMC § 302.8, which he documented in a summons and Appearance Ticket 1855 and personally served on Daly.  (*Id.* ¶¶ 40–42).

On August 16, 2017, Smith observed and documented a prohibited tow-away sign on Daly's property, in violation of PJV § 250-31G, and recorded his observations in

Appearance Ticket 1856. (*Id.* ¶¶ 55–56). Smith also observed a flagpole on Daly's property that exceeded 15 feet in height that had been placed without the required variance in violation of PJV § 250-28 A. (Defs.' 56.1 Stmt. ¶ 60). Smith documented his observations in a summons and Appearance Ticket 1869, which noted that Daly had been issued a prior written notice about the flagpole. (*Id.* ¶ 61).

That same day, Smith also observed additional grading being done on Daly's property without a permit in violation of PJV § 241-2(A) and the Stop Work Order. (*Id.* ¶ 65). Smith documented his observations in a summons and Appearance Ticket 1879, noting the prior violations issued to Daly. (*Id.* ¶ 67). Smith then personally served all three Appearance Tickets, 1856, 1869, and 1879, on Daly. (*Id.* ¶ 68).

On June 18, 2018, Defendant Bailey, a Village Ordinance Inspector, observed clearing and grading of the hillside on Daly's property by a commercial contractor and workers, as well as disturbance of vegetation and soil, and placement of footings for a foundation for a retaining wall. (*Id.* ¶¶ 3, 86–87). Based on an interview with the contractor, Bailey determined that Daly hired and authorized the work, which Bailey determined went beyond normal maintenance under the Village Code, but was conducted without written approval. (Defs.' 56.1 Stmt. ¶¶ 88–89). Bailey documented these observations in Appearance Ticket 1865. (*Id.* ¶¶ 86–87).

On June 20, 2018, Bailey observed additional clearing and grading on Daly's property, (*id.* ¶ 90), documenting his observations in Appearance Ticket 1864, (*id.* ¶¶ 92–93). Bailey again interviewed the contractor (determining Daly authorized the work) and searched the public records (finding no written approval). (*Id.* ¶¶ 94–95). Six

days later, he observed more clearing and grading and documented his observations in Appearance Ticket 1860.  (*Id.* ¶ 96).

Beginning in 2017, the Village initiated eight cases against Daly in the Village Justice Court ("the Justice Court Cases"), charging 12 violations of the Village Code.[2] (Pl.'s Rule 56.1 Statement dated May 5, 2025 ("Pl.'s 56.1 Stmt."), Dkt. No. 72 ¶ 4; Defs.' 56.1 Stmt. ¶ 84).  Daly pled not guilty and denied every violation.  (Pl.'s 56.1 Stmt. ¶ 5).

In January of 2019, the Zoning Board was notified that the non-compliant flagpole on Daly's property was removed.  (Defs.' 56.1 Stmt. ¶ 102).  On February 7, 2019, the Planning Board approved Daly's revised revegetation plan, subject to several conditions.  (*Id.* ¶ 103).  Daly also obtained a building permit to construct a retaining wall on April 22, 2019.  (*Id.* ¶ 104).

On November 18, 2022, given that "two-thirds of remedial work ha[d] been done," Justice Reilly dismissed the Justice Court Cases on two grounds: speedy trial and sua sponte in the interest of justice.  (*Id.* ¶¶ 108–09; Pl.'s 56.1 Stmt. ¶ 7).

Daly commenced this action on December 14, 2023.  (Compl., Dkt. No. 1).  On February 27, 2024, Daly filed an Amended Complaint.  (Am. Compl., Dkt. No. 26).  On June 27, 2024, the Honorable Gary R. Brown issued an order disposing of most of Daly's

---

[2] The Village also filed a lawsuit against Daly in Suffolk County Supreme Court on June 21, 2017, regarding Daly's work on the property.  (Defs.' 56.1 Stmt. ¶ 72).  The Village moved by Order to Show Cause for a temporary restraining order ("TRO") and preliminary injunction ("PI").  (*Id.* ¶¶ 77–78).  The Suffolk Supreme Court granted the Village a TRO, and later a PI, prohibiting Daly from "removing, cutting, or altering any trees, vegetation, or grade in any manner, or by any means, at the premises[.]"  (*Id.* ¶¶ 79–80).  The parties executed a Stipulation of Settlement on March 16, 2023 to resolve the case.  (*Id.* ¶¶ 81–82).

claims with prejudice but permitting the Fifth Cause of Action for malicious prosecution and abuse of process arising out of the Justice Court Cases to proceed.[3] (Mem. & Order dated June 27, 2024, Dkt. No. 46 at 9).  The parties move for summary judgment as to the remaining claims.

DISCUSSION

To prevail on a malicious prosecution claim under New York and federal law, a plaintiff must demonstrate: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice."  *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)).  To prevail on an abuse of process claim—which in the criminal context is a procedural due process claim—a plaintiff must establish that a defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act[,] (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Zappin v. Cooper*, No. 23-165, 2024 WL 3084015, at *2 (2d Cir. June 21, 2024) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

Probable cause is a complete defense to a malicious prosecution claim.  *Frost v. N.Y.C. Police Dep't,* 980 F.3d 231, 242–43 (2d Cir. 2020); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) ("[I]f there was probable cause for the prosecution, then no

---

[3] The case was transferred from the Honorable Gary R. Brown to the undersigned on January 8, 2025.

10

malicious prosecution claim can stand."). As to abuse of process, the Second Circuit has not definitively answered the question. *See Zappin*, 2024 WL 3084015, at *2 (citing *Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015)). However, here, Daly purports to satisfy the second element of an abuse of process claim (an intent to do harm), based solely on a lack of probable cause. (Pl.'s Mot. at 18–19). Therefore, a finding of probable cause to initiate the cases is sufficient to defeat Daly's abuse of process claim. *See Tuccillo v. County of Nassau*, 723 F. App'x 81, 82 (2d Cir. 2018) ("New York state courts have subsequently held that probable cause will defeat an abuse of process claim under at least some circumstances.")); *Mangino v. Inc. Village of Patchogue*, 814 F. Supp. 2d 242, 248 (E.D.N.Y. 2011) ("[W]here plaintiff's only argument to support such elements is a purported lack of probable cause, such claims must fail if probable cause is found to exist."); *e.g.*, *Rivera v. Jahmi*, 801 F. Supp. 3d 129, 161–62 (E.D.N.Y. 2025) (granting defendant summary judgment as to plaintiff's abuse of process claim given probable cause to effectuate arrest) (collecting cases).

Probable cause is found in "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd*, 336 F.3d at 76. In the context of malicious prosecution, "probable cause is assessed in light of the facts known or reasonably believed by the officers at the initiation of the prosecution, not the arrest." *Keyes v. City of New York.*, No. 21-2406, 2023 WL 176956, at *4 (2d Cir. Jan. 13, 2023). The existence of probable cause turns on "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Bernshtein v. City of New York*,

11

496 F. App'x 140, 142 (2d Cir. 2012) (quotation omitted)); *see also Thomas v. Genova*, No. 23-7452, 2025 WL 583182, at *2 (2d Cir. Feb. 24, 2025) ("Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." (quotation omitted)).

Probable cause "does *not* require absolute certainty, and [courts] instead look to the totality of the circumstances." *Id.* (quotation omitted). To that end, "the fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause." *Id.* (quotation omitted).

Here, the undisputed facts demonstrate that Defendants had probable cause to initiate the Justice Court Cases against Daly. The Justice Court Cases were based on the twelve accusatory instruments prepared by Village Ordinance Inspectors between 2017 and 2018. (Defs.' 56.1 Stmt. ¶ 84). They contained detailed information about the relevant officer's observations, and the factual bases for the alleged violations, which included searches of databases for evidence of permits allowing the work that was being done on Daly's property. Such accusatory instruments—with similar levels of evidentiary support—are often found sufficient to demonstrate the existence of probable cause. *E.g.*, *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 258–59, 261 (E.D.N.Y. 2015) (finding probable cause for appearance tickets issued against homeowner in connection with alleged violations of town's rental permit law, based on facts from town investigator's site visit and observations, and absence of rental permit with housing bureau); *Rodriguez v. Village of Sleepy Hollow*, No. 13-CV-8465, 2015 WL 4597446,

12

at *7 (S.D.N.Y. July 29, 2015) (finding probable cause based on appearance tickets for construction infractions based in part on officer's observations); *Lepper v. Village of Babylon*, No. 18-CV-7011, 2022 WL 939719, at *22 (E.D.N.Y. Mar. 29, 2022) (granting summary judgment where defendants had probable cause to issue tickets and commence an action over failure to obtain necessary land-use permits based on investigator's observations).

The tickets that formed the basis of Daly's prosecution reflect the Inspectors' observations and simultaneous documentation of the violations on Daly's property on specific days: improper clearing of vegetation, (Defs.' 56.1 Stmt. ¶¶ 18–19, 30–32, 34–37, 86–87); a noncompliant flagpole without the required variance, (*id.* ¶¶ 60–61); prohibited signs, (*id.* ¶¶ 55–56); the improper storing of multiple unregistered vehicles, (*id.* ¶¶ 40–42); improper construction work on a retaining wall, (*id.* ¶¶ 92–93); and permit-less grading work, (*id.* ¶¶ 65–68, 86–87, 90, 96). The Inspectors' personal observations were also documented and sworn under penalty of perjury. (Defs.' 56.1 Stmt. ¶¶ 13–14). Therefore, with no facts to the contrary, the Court finds that there was probable cause, based on these accusatory instruments, to prosecute Daly.

Daly's arguments to the contrary are unavailing. For example, Daly contends that the violations are not based on probable cause because they "contain nothing but conclusory statements that are not based upon personal observations," and Defendants had "no reason to suspect [Daly] of having violated any law." (Pl.'s Mot. at 8). The record belies this argument. The violation tickets recount the Inspectors' observations, interviews, and actions taken to inspect and verify the alleged violations. (*See, e.g.,*

Ticket 1861, attached to Defs.' Mot. as Ex. 24, Dkt. No. 70-10 (describing that Bailey "observed that work consisting of clearing and grading . . . was being done by a commercial contractor . . . while the stop work order was still in effect" and that he "searched the records maintained by the building department and determined that the stop work order ha[d] not been rescinded and that no permit for such work ha[d] been issued"); Ticket 1833, attached to Defs.' Mot. as Ex. 13, Dkt. No. 70-10 (describing that Smith "observed: [t]hat [Daly] had a large area located on top of a slope on the eastern portion of his property cleared of vegetation and trees" and that "[a] search of Building Department records indicate[d] no such permit or approval ha[d] been issued")). Their contents establish probable cause. *See, e.g.*, *Carminucci v. Pennelle*, No. 18-CV-2936, 2020 WL 4735172, at *10 (S.D.N.Y. Aug. 14, 2020) ("[Building Inspector's] observation, however brief, is enough to establish probable cause in this instance because it explains that he observed a broken fence on Plaintiffs' property in violation of the Town Code.").[4]

---

[4] Daly also makes various assertions, without citations to caselaw, about the admissibility of the violations and the Inspectors' observations. (*See* Pl.'s Mot. at 8–16). But it is quite plain that the statements contained in the violation tickets and the tickets themselves are both admissible and sufficient to demonstrate the existence of probable cause. *See Smith v. City of New York*, No. 14-CV-9069, 2016 WL 5793410, at *4 (S.D.N.Y. Sep. 30, 2016) ("The statements of the [witness] contained in the police reports are not inadmissible hearsay where, as here, they are not offered for the truth of the matter asserted but for purposes of establishing whether the arresting officers had information giving them probable cause."). Nor is there any merit to Daly's contention that the evidence in the tickets was not direct evidence, like video of violations, but merely the Inspectors' own observations. An officer's personal observations are sufficient to establish probable cause; he need not provide testimony from others or video or forensic evidence to prosecute. *See Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (concluding "that the defendants . . . had, from their personal observations, sufficient evidence to establish probable cause.").

14

Ultimately, Defendants have shown that there was probable cause to initiate the Justice Court Cases against Daly, and Daly has provided no evidence to the contrary.[5] *See Thomas v. Genova*, 698 F. Supp. 3d 493, 511–12 (E.D.N.Y. 2023) (granting summary judgment where there was probable cause to commence a code enforcement given the undisputed fact that the property was being operated as a two-family home in a one-family zone and plaintiff had no permit to do so), *aff'd*, No. 23-7452, 2025 WL 583182 (2d Cir. Feb. 24, 2025).  As such, the Court grants Defendants' summary judgment on Daly's malicious prosecution and abuse of process claims.  Granting Defendants' motion necessarily means that Daly's motion is denied.

## CONCLUSION

For the reasons explained above, Daly's motion for summary judgment is denied and Defendants' motion is granted.  Daly's claims are dismissed with prejudice.  The Clerk of Court is directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  March 6, 2026
      Central Islip, New York

---

[5] Because the Court finds that Daly's claims are dismissed, it need not address the parties' arguments as to the other elements of the claims nor the Village's liability under *Monell*.

15